**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

| | | |
|---|---|---|
| **MICHAEL K. MERRIFIELD,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| **v.** | ) | **Civil Action No. 3:16-12280** |
| | ) | |
| **DAVID BALLARD, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court are the following: (1) Petitioner's "Motion to Waive Exhaustion Requirement" (Document No. 3), filed on December 19, 2016; and (2) Petitioner's "Motion for Stay and Abeyance" (Document No. 16, pp. 19 - 20), filed on March 20, 2017. By Order entered on December 20, 2016, the above case was referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and a recommendation for deposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 4.) Having thoroughly examined the record in this case, the undersigned respectfully recommends that the District Court deny Petitioner's "Motion to Waiver Exhaustion Requirement," deny Petitioner's "Motion for Stay and Abeyance," and dismiss his Section 2254 Petition without prejudice.

## PROCEDURE AND FACTS

**1.      State Court Proceedings:**

Following a jury trial, Petitioner was convicted in the Circuit Court of Putnam County on January 28, 2008, of First Degree Murder, Death of a Child by Any Means Other Than Accident, and Sexual Abuse. (Document No. 1, p. 1.) The jury did not recommend mercy and the Circuit Court sentenced Petitioner to life in prison without the possibly of parole. (Id.) On April 20,

2010, Petitioner filed his direct appeal. (Document No. 11-6, p. 3.) In his appeal, Petitioner asserted the following errors: (1) Insufficient evidence to support conviction; (2) Denied change of venue; (3) Petitioner not present for several jury questions; (4) Petitioner not present for telephonic hearing; (5) Newly discovered evidence; and (6) Improper burden shifting regarding W. Va. Code 61-2-2. (Id., p. 3.) The West Virginia Supreme Court refused Petitioner's appeal on September 22, 2010. (Id.)

On May 9, 2011, Petitioner, acting *pro se*, filed his Petition for Writ of *Habeas Corpus* in the Circuit Court of Putnam County. (Document No. 11-6.); Merrifield v. Siefert, Case No. 11-C-126 (Cir. Ct. Putnam Co). In his Petition, Petitioner asserted 45 grounds for *habeas* relief. (Id.) Petitioner also filed a Motion for Appointment of Habeas Counsel and a Motion to Appoint a Special Prosecutor. (Document No. 11-4.) By Order filed on June 13, 2011, the Circuit Court appointed Chief Public Defender George Castelle as *habeas* counsel. (Id.) As Chief Public Defender, Mr. Castelle assigned the case to Deputy Public Defender Jason Parmer. (Id. and Document No. 11-18.) Between July 30, 2011 and December 12, 2011, Petitioner filed three *pro se* amendments to his *habeas* petition and numerous letters addressed to the Circuit Court. (Document Nos. 11-4, 11-8, 11-12.) By letter dated January 9, 2012, Petitioner complained to the Circuit Court that his *habeas* case had been assigned to Mr. Parmer, who Plaintiff felt was not diligently pursuing his case. (Document No. 11-12.) Based upon the correspondence from Petitioner, the Circuit Court sent a letter to the Public Defender's Office on January 23, 2012. (Document No. 11-17.) Specifically, the Circuit Court requested a status update from the Public Defender's Office and stated that, if necessary, a status conference would be scheduled in the near future. (Id.) By letter dated January 27, 2012, Mr. Castelle advised the Circuit Court that Mr. Parmer was actively working on Petitioner's case and included a memorandum prepared by

Mr. Parmer explaining his work on the case. (Document No. 11-18.) Specifically, Mr. Parmer stated he had taken the following action concerning Petitioner's case: (1) Obtained eight banker boxes of material from trial and appellate counsel that he was currently in the process of reviewing; (2) Conducted two meetings with Petitioner at the Northern Correctional Center regarding his *pro se* petition; (3) Interviewed fact witnesses as requested by Petitioner; and (4) Acknowledged the necessity of consulting with at least one expert regarding the medical issues. (Id., p. 3.)

On March 19, 2012, Petitioner filed his fourth *pro se* amended *habeas* petition. (Document Nos. 11-4 and 11-9.) By letter dated March 24, 2012, Petitioner requested that the Circuit Court appoint him new counsel because "numerous red flags have arose regarding [Mr. Palmer's] integrity, his competence, his impartiality, and his distortion of the facts." (Document No. 11-6.) On April 9, 2012, Petitioner filed a *pro se* "Motion to Preclude the State from Accusing & Re-litigating Allegations of Sexual Intrusion or Penetration." (Document No. 11-4.) On April 23, 2012, the State filed its Response to Petitioner's *habeas* petition. (Id.) Petitioner, however, continued to file amended *pro se* petitions. (Id.) Between April 30, 2012 and September 11, 2012, Petitioner filed two additional amendments to his *habeas* petition and numerous letters to the Court supplementing his arguments and citing additional case law. (Document Nos. 11-4, 11-10, 11-11.) By letter dated September 5, 2012, Petitioner complained that he had difficulty communicating with Mr. Palmer, expressed his frustration that they could not agree on issues to assert, and requesting permission to "act as co-counsel with Mr. Parmer." (Document No. 11-14.) A status conference was conducted on September 21, 2012, and the Circuit Court directed that Petitioner's amended petition be filed by May 31, 2013.[1] (Document

---

[1]  During the status conference, Mr. Parmer explained as follows:

Nos. 3-3, 11-4 and 11-23.)

By letter dated February 11, 2013, Petitioner notified that Circuit Court that communication had been good with Mr. Parmer until approximately one month ago, and since that time, communication had been difficult because counsel had not accepted Petitioner's weekly calls. (Document No. 11-13.) Petitioner further informed the Circuit Court that he intended to file an amended *pro se habeas* petition. (Document No. 11-13.) By letter dated March 6, 2013, Petitioner complained that Mr. Parmer was incompetent in the area of *habeas* law and requested that the Circuit Court remove Mr. Parmer as counsel. (Document No. 11-15.) On April 4, 2013, Petitioner filed a *pro se* "Motion to have Current Habeas Corpus Counsel

---

Well, you Honor, the issue we are having is that at time we are at loggerheads with regard to strategy, with regard to contents of the amended petition. I have been informed that Mr. Merrifield will not agree to waive any of the grounds that he has raised, which makes it difficult for me to file an amended petition, because naturally I think that there are some grounds that are stronger than others.

\* \* \*

If - - Mr. Merrifield and I are going to have to agree and it's very difficult for use to agree about interpretation of the law, what cases mean. We have hours - - I've had two hour - - probably four hour meetings with him at Moundsville and it's - - there's not a lot of communication sometimes. It's me talking to him and talking at me and not a lot of agreement in between. We get along okay, it's just that we don't agree on a lot of things. So that's my suggestion, Judge. And we're going to have to employ an expert probably, send him evidence, have him analyze the physical evidence in the case. So I know that's going to take some time. Mr. Merrifield has already contacted someone. I'm not at the point where I'm in a position to really talk to that expert yet.

One of the holdup we have is that I've had Mr. Rebrook and Mr. Clifford's files. They are in a condition where I'm not really sure what's in there and what's not. Because they're basically banker boxes with paper that is everywhere and it's not really organized, and I can't tell, you know, if all the discovery is in there or not. But there are some discovery issues that Mr. Merrifield ask me about. I can't find the documents that he's asking me about, so that's why I filed, a week or two ago, the motion for copy of the file. I guess we can take that up in a minute.

\* \* \*

(Document No. 3-3, pp. 1 – 2.)

Withdrawn & New Counsel Appointed." (Document No. 11-21.) In support, Petitioner stated as follows: (1) Mr. Parmer "has intentionally argued against Petitioner's blatant best interest, to the point of purposely inciting anger from the Petitioner;" (2) Petitioner has raised "glaring constitutional grounds throughout his *pro se* Petition [and] Parmer basically rejects all of the Petitioner's grounds;" and (3) "Parmer's only intent in this case is to either be recused from representation or help keep the Petitioner in prison." (Id.) By letter dated April 7, 2013, the Petitioner requested that the Circuit Court "NOT ACCEPT ANY CASE WORK FROM JASON PARMER. I REFUSE TO ALLOW HIM TO ACT AS MY ATTORNEY." (Document No. 11-22.) Petitioner continued to argue that Mr. Parmer was part of a "conspiracy" and "he has some secret duty to sabotage my grounds" for *habeas* relief. (Id.) Petitioner complained that he had reviewed the amended petition prepared by Mr. Parmer and it "is actually a prosecutorial rebuttal to each of my ground to which his arguments are in favor of the State." (Id.) Petitioner again requested that new counsel be appointed because neither Mr. Parmer, nor any attorney within the Public Defender's Office, was "salvageable." (Id.)

On May 7, 2013, Mr. Parmer filed a "Motion for Extension of Time to File Amended Petition." (Document No. 11-19.) In support of the Motion, Mr. Parmer stated as follows: (1) Petitioner's "*pro se* filings have greatly increased the amount of time it normally takes to draft an amended petition because I am obligated to read through all of his filings and cited cases so that I can form an opinion of their relevance;" (2) "[I]n January of this year, the appellate division in my office lost one of its positions, so the remaining attorney have taken on additional work;" and (3) "I am working with an expert that unexpectedly left the country and has not responded to my inquiries regarding his work since April 10, 2013." (Id.) On May 10, 2013, Mr. Parmer filed an Addendum to his Motion for Extension of Time stating that the expert, Dr. Bonnell, "now

refuses to talk to the undersigned counsel because [Petitioner] has informed him that he has filed a motion to have me removed as his attorney." (Document No. 11-20.) Mr. Parmer explained that he had been working with Dr. Bonnell for the "past several months as a part of the investigation in [Petitioner's] case" and "[t]his places undersigned counsel in an untenable position with a deadline to file an amended petition on one hand and an uncooperative expert on the other." (Id.)

On May 30, 2013, Petitioner filed his seventh *pro se* amended *habeas* petition. (Document No. 11-4, pp. 3 – 4.) On the same day, Petitioner filed a *pro se* "Motion to Compel Probative/Exculpatory Documentation in Possession of the State." (Id., p. 4.) On June 14, 2013, Petitioner filed a *pro se* request for production of documents. (Id.) The Circuit Court conducted a status hearing on June 27, 2013 and Petitioner advised that Court he did not want Mr. Parmer, or anyone in the Kanawha County Public Defender's Office, as counsel.[2] (Document Nos. 3-6 and 11-24.) Therefore, the Circuit Court ordered that Mr. Parmer be allowed to withdraw as counsel and vacated the scheduling order entered on September 12, 2012.[3] (Id.) By letters dated July 1,

---

[2] During the status conference, the Circuit Court advised Petitioner that removing Mr. Parmer and the whole Public Defender's Office would "extremely delay any further prosecution of this matter" because it was a civil matter and the Court did not know of another available lawyer "offhand." (Document No. 3-6, p. 2.) Petitioner acknowledged that he understood the complications and delay, but still wished to have new counsel appointed. (*Id.*) Following Petitioner's acknowledgment, the Circuit Court stated that "if you understand the delay and the issues, which I think you're consenting to today, there's no reason to go through the reasons for removal" of Mr. Parmer. (*Id.*) During the hearing, Petitioner inquired about the status of his *pro se* Motion for Discovery. (*Id.*, p. 3.) The Circuit Court explained to Petitioner that although the case would remain on the active docket, that the case would be effectively stayed until counsel was appointed unless Petitioner decided to proceed *pro se*. (*Id.*) Thus, the Court would not be ruling on such motions until counsel was appointed. (*Id.*) Petitioner acknowledged that he understood and agreed to the foregoing. (*Id.*)

[3] During the status conference, Mr. Parmer stated as follows (Document No. 3-6, p. 1.):
> [S]peaking for myself, your Honor, or speaking for my office, I've been informed by my supervisor that we can't transfer the case to anyone else because the

2013, and July 23, 2013, Petitioner provided the Court with a list of proposed attorneys and law firms. (Document Nos. 11-25 and 11-26.) In response, the Circuit Court sent letters to various law firms inquiring whether they would be interested in representing Petitioner. (Document No. 3-7.) On September 5, 2013, Mr. Parmer provided the Circuit Court with an attorney list from Kanawha County that takes court-appointed cases. (Document No. 11-4.) In response, the Circuit Court sent letters to various attorneys inquiring whether they would be able and willing to represent Petitioner in his *habeas* proceedings. (Id., p. 4.)

On November 15, 2013, Petitioner filed his eighth *pro se* motion to amend his *habeas* petition. (Id.) On January 23, 2014, Petitioner filed his eighth *pro se* amended *habeas* petition. (Id.) From January 30, 2014 to August 28, 2014, Petitioner filed numerous letters with the Circuit Court in support of his *habeas* petition. (Id.) By Order entered on January 8, 2015, the Circuit Court appointed Mr. Duane C. Rosenlieb, Jr. as *habeas* counsel. (Document No. 3-8.) Petitioner acknowledges that Mr. Rosenlieb visited him at the prison on March 17, 2015. (Document No. 3, p. 2.) On June 4, 2015, Petitioner filed his *pro se* "Grounds for Habeas Corpus Relief." (Document No. 11-27.) By letter dated June 26, 2015, Mr. Rosenlieb stated to Petitioner

---

amount of time I've spent on the case already. I've spend literally hundreds of hours going through trial transcripts, the appellate documents, all the discovery, doing my investigation. I think it would be a massive waste of resources to appoint anyone else to represent him from our office.

Now, of course, it is - - as I recognized at the last hearing, we do have difficulty communicating. Essentially, he see things the way he wants to see them and he doesn't listen to what I have to say most of the time. He's - - he fancies himself a legal scholar and sometimes we don't see eye to eye on that.

Your Honor, I will respect the Court's wishes, whatever it wishes to do. I'll keep working on his case, but I hope that the Court will recognize the difficulty that I have communicating with Mr. Merrifield. The letters that I get are much like the letters that are in the court file, they're basically legal briefs. And I'm required not only to read the cases, but also read the facts that he's talking about and try to find them in the record because sometimes they're accurately remembered and sometimes they're not so it creates a lot of work for me in

that his *pro se* "Grounds for Habeas Corpus Relief" was an "amazing" piece of work from a non-lawyer. (Document No. 3-9.) Mr. Rosenlieb, however, stated that he "would like to clean this up a bit and send it back to [Petitioner] for review," but "I think we are getting close to a place where a final amended petition can be assembled and filed." (Id.) On September 17, 2015, Petitioner filed his *pro se* Memorandum of Law in Support of Ground 15 and a supplement to his *habeas* petition. (Document No. 11-4, p. 5.) By letter filed on November 2, 2015, Petitioner complained to the Circuit Court that he was experiencing communication problems with Mr. Rosenlieb. (Id.) By letter filed on November 12, 2015, Mr. Rosenlieb advised Petitioner that he would be visiting Petitioner at the prison before the end of the month and that he had "orally relayed [Petitioner's] offer to First Assistant Larry Frye." (Id. and Document No. 3-10.) On December 3, 2015, Petitioner filed a *pro se* supplement to his *habeas* petition. (Id.) By letter filed December 10, 2015, Petitioner complained to the Court that Mr. Rosenlieb had advised him by a letter dated November 9, 2015, that he would be visiting Petitioner at the prison, but such a visit had not yet occurred. (Document No. 11-28.) Petitioner further requested that the Circuit Court contact Mr. Rosenlieb and "ask him to get on the ball." (Id.)

By letter dated April 16, 2016, Mr. Rosenlieb advised Petitioner that his "request for a roadmap of some kind through [Petitioner's] multiple *habeas* filings touched off somewhat of a crap storm, and that was not intended." (Document No. 3-11) Mr. Rosenlieb explained that he did not expect Petitioner to rewrite the *habeas*, but to just point out what amendment Petitioner wished to go where in the petition. (Id.) Mr. Rosenlieb explained that "[t]his situation has brought us to a screeching halt, and, although we were ready to rewrite some sections of your work, I didn't feel comfortable proceeding without some direction on how to assemble the many

addition.

amendments you have filed." (Id.) Therefore, Mr. Rosenlieb asked Petitioner for suggestions on how to proceed with compiling an amended petition. (Id.) By letter filed on May 5, 2016, Petitioner again complained of communication problems with Mr. Rosenlieb but stated that he would "not fire Mr. Rosenlieb" because "[t]he issues in my case are solid and everyone has been put on notice of what they are." (Document No. 11-29.) On June 2, 2016, Petitioner filed a Motion to Proceed Pro Se. (Document No. 11-4, p. 5.) On June 6, 2016, Petitioner filed a "Motion to Have Current Habeas Counsel Withdrawn From Representation and To Proceed Pro Se." (Document No. 11-30.) In support, Petitioner states as follows: (1) Mr. Rosenlieb is attempting to "cover up" for the ineffectiveness of trial counsel; (2) Mr. Rosenlieb has not kept his promise to be Petitioner's "mouthpiece;" (3) Mr. Rosenlieb incorrectly claims that certain issues are "non issues;" (4) Mr. Rosenlieb refuses to argue any of Petitioner's prior filed motions; and (5) "Mr. Rosenlieb has begged the Petitioner to 'fire' him." (Id.) Petitioner further stated that he was going to file a motion to transfer the case "to a different jurisdiction far from Putnam County" and a motion for disqualification of the Putnam County Prosecuting Attorney's Office. (Id.)

By letter filed July 14, 2016, Petitioner advised the Circuit Court that he is "redoing [his] entire Petition for Writ of Habeas Corpus" and his "plan is to amend the entire petition from beginning to end." (Document No. 11-31.) Petitioner again stated that he intended to file a motion to transfer and a motion for disqualification of the Putnam County Prosecuting Attorney's Office. (Id.) On October 27, 2016, Petitioner filed his "Final Amended Petition for Writ of Habeas Corpus" (Document Nos. 11-1, 11-2, and 11-3) and Motion for Bond (Document No. 11-33). Petitioner's "Final Amended Petition" is more than 850 pages in length and asserts 58 grounds for relief (many of which include multiple sub-grounds). (Document Nos. 11-1, 11-2,

and 11-3.) In his Motion for Bond, Petitioner acknowledges that his "Final Amended Petition" is voluminous and "[t]he amount of time it would take the Court to adjudicate the entire Petition is unimaginable." (Document No. 11-33, p. 3.) By letter filed November 14, 2016, Petitioner notified the Circuit Court that he was in the process of obtaining an affidavit in support of Ground One of his "Final Amended Petition." (Document No. 11-5.) Petitioner also reiterated that he wished to proceed *pro se* and there had been "zero communication" with Mr. Rosenlieb since the filing of the "Final Amended Petition." (Id.) Petitioner stated that he had "put in over 5,000 hours of work in assembling [his] Petition" and he admitted that his "original filings were very hard to put in order and to determine what went where." (Id.) On November 16, 2016, Mr. Rosenlieb filed a "Motion for Provision of Copies Without Cost." (Document No. 11-34.) Specifically, Mr. Rosenlieb requested that the Circuit Court accept the "Final Amended Petition" for filing and order that "copies be reproduced as necessary to effectuate service of the Petitioner's Amended Habeas Corpus Petition." (Id.) Petitioner's "Final Amended Petition" and motion to proceed *pro se* are currently pending before the Circuit Court.

**2.     Section 2254 Petition:**

On December 19, 2016, Petitioner, acting *pro se* and incarcerated at Mount Olive Correctional Complex, filed his instant Petition Under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* By a Person in State Custody (Document No. 1) and "Motion to Waive Exhaustion Requirement Pursuant to 28 U.S.C. § 2254(b)(1)(B)(ii) Compelling a De Novo Review of Petitioner's Writ of Habeas Corpus" (Document No. 3). In his Petition, Petitioner asserts the same grounds as asserted in his "Final Amended Petition" as filed with the Circuit Court. (Document Nos. 1 through 1-16.) In his "Motion to Waive Exhaustion Requirement," Petitioner states that the exhaustion requirement should be waived because his "diligent effort to adjudicate

his Petition for Writ of Habeas Corpus have turned out to be ineffective and futile, resulting in an inordinate delay prodding into a due process violation." (Document No. 3, p. 1.) Petitioner complains that his "very meritorious Petition for Writ of Habeas Corpus has now been lingering in the State Court for nearly six years without an Amended Petition filed from any licensed attorney." (Id., p. 2.) Petitioner further contends that "the State Court delayed the appointment of counsel for 17 months after initial appointed counsel was removed." (Id., pp. 6 and 9.) Thus, Petitioner argues that "[t]he inordinate delay has caused an injurious injustice to the Petitioner's zealous endeavors at proving he is actually innocent and was subjected to a blatant railroad, resulting in an extreme miscarriage of justice." (Id., p. 7.) Petitioner further appears to argue that the Court should waive exhaustion because "claims in the Petition are by no means 'ordinary errors,' but grave constitutional offenses." (Id., p. 8.) Petitioner claims that "[t]he docket sheet and the included exhibits show the inordinate delay cannot be blamed on one individual, but mostly on the politics of the case and fear of reprisal." (Id.)

As Exhibits to his Motion to Waive Exhaustion, Petitioner attaches the following: (1) A copy of Petitioner's Affidavit (Document No. 3-1.); (2) A copy of the Docket Sheet of his State *habeas* case (Case No. 11-C-126) (Document No. 3-2.); (3) A copy of the transcripts from the Status Hearing conducted on September 21, 2012 (Document No. 3-3.); (4) A copy of an e-mail communication between Mr. Parmer and Dr. Bonnell dated May 9, 2013 (Document No. 3-4.); (5) A copy of a letter from Dr. Bonnell to Petitioner dated January 12, 2013 (Document No. 3-5); (6) A copy of the transcripts from the status hearing conducted on June 27, 2013 (Document No. 3-6.); (7) A copy of a letter from the Circuit Court to Zuckerman, Spaeder, Goldstein, Taylor & Kolkler dated October 3, 2013, regarding the possible representation of Petitioner (Document No. 3-7.); (8) A copy of the Circuit Court's Order entered January 8, 2015, appointing Mr.

Duane Rosenlieb as *habeas* counsel (Document No. 3-8.); (9) A copy of a letter from Mr. Rosenlieb to Petitioner dated June 26, 2015 (Document No. 3-9.); (10) A copy of a letter from Mr. Rosenlieb to Petitioner dated November 9, 2015 (Document No. 3-10.); (11) A copy of a letter from Mr. Rosenlieb to Petitioner dated April 16, 2016 (Document No. 3-9.); and (12) A copy of Petitioner's "Motion to Have Current Habeas Counsel, Daune C. Rosenlieb, Jr. Withdrawn From Representation and To Proceed in Pro Se" (Document No. 3-12.).

On January 3, 2017, Petitioner paid the $5.00 filing fee. (Document No. 5) On January 4, 2017, the undersigned directed Respondent to file a Response to Petitioner's "Motion to Waive Exhaustion Requirement." (Document No. 7.) On February 16, 2017, Respondent filed Response in Opposition with Exhibits. (Document Nos. 11 through 11-35.) Specifically, Respondent argues that "petitioner is not entitled to federal review of unexhausted claims raise in state habeas proceedings where he has caused the delay in those proceedings." (Document No. 11, pp. 9 – 13.)

As Exhibits, Respondent attaches the following: (1) A copy of Petitioner's "Final Amended Petition for Writ of Habeas Corpus" and Motion for Bond (Document No. 11-1 through 11-3.); (2) A copy of the Circuit Court's Docket Sheet for Case No. 11-C-126 (Document No. 11-4.); (3) A copy of Petitioner's letter addressed to the Circuit Court dated November 7, 2016 (Document No. 11-5.); (4) A copy of Petitioner's State *habeas* petition filed on May 9, 2011 (Document No. 11-6.); (5) A copy of Petitioner's letter addressed to the Clerk of the Circuit Court dated September 7, 2012, regarding the filing of his Sixth Motion for Leave to Amend (Document No. 11-7.); (6) A copy of Petitioner's letter addressed the Circuit Court dated March 13, 2012 (Document No. 11-8.); (7) A copy of Petitioner's "Fourth Motion for Leave to Amend Writ of Habeas Corpus" filed on March 19, 2012 (Document No. 11-9.); (8) A copy of

Petitioner's letter to the Circuit Court dated May 1, 2012 and May 16, 2012 providing case law (Document No. 11-10.); (9) A copy of Petitioner's letter addressed to the Circuit Court dated July 20, 2012, regarding facts and exhibits supplementing his *habeas* petition (Document No. 11-11.); (10) A copy of Petitioner's letter addressed to the Circuit Court dated January 9, 2012 (Document No. 11-12.); (11) A copy of Petitioner's letter addressed to the Circuit Court dated February 11, 2013 (Document No. 11-13.); (12) A copy of Petitioner's letter addressed to the Circuit Court dated September 5, 2012 (Document No. 11-14.); (13) A copy of Petitioner's letter addressed to the Circuit Court dated March 6, 2013 (Document No. 11-15.); (14) A copy of Petitioner's letter addressed to the Circuit Court dated March 24, 2012 (Document No. 11-16.); (15) A copy of letter from the Circuit Court addressed to Petitioner's counsel dated January 23, 2012 (Document No. 11-17.); (16) A copy of a letter from the Kanawha County Public Defender's Office to the Circuit Court dated January 27, 2012 (Document No. 11-18.); (17) A copy of "Petitioner's Motion for Extension of Time to File Amended Petition" filed on May 7, 2013 (Document No. 11-19.); (18) A copy of the "Addendum to Motion for an Extension of the Time to File the Petitioner's Amended Habeas Petition" filed on May 10, 2013 (Document No. 11-20.); (19) A copy of Petitioner's "Motion to Have Current Habeas Corpus Counsel Withdrawn & New Counsel Appointed" filed on April 4, 2013 (Document No. 11-21.); (20) A copy of Petitioner's letter addressed to the Circuit Court dated April 7, 2013 (Document No. 11-22.); (21) A copy of the "Status Hearing Order" filed on September 25, 2012 (Document No. 11-23.); (22) A copy of the Circuit Court's Order filed on July 12, 2013 (Document No. 11-24.); (23) A copy of Petitioner's letter addressed to the Circuit Court dated July 1, 2013 (Document No. 11-25.); (24) A copy of Petitioner's letter addressed to the Circuit Court dated July 23, 2013 (Document No. 11-26.); (25) A copy of "Petitioner's Grounds for Habeas Corpus Relief" filed

on June 4, 2015 (Document No. 11-27.); (26) A copy of Petitioner's letter addressed to the Circuit Court filed December 10, 2015 (Document No. 11-28.); (27) A copy of Petitioner's letter addressed to the Circuit Court dated May 1, 2016 (Document No. 11-29.); (28) A copy of Petitioner's "Motion to Have Current Habeas Counsel, Daune C. Rosenlieb, Jr. Withdrawn From Representation and to Proceed in Pro Se" filed on June 6, 2016 (Document No. 11-30.); (29) A copy of Petitioner's letter addressed to the Circuit Court dated July 10, 2016 (Document No. 11-31.); (30) A copy of Petitioner's letter addressed to the Circuit Court dated October 5, 2016 (Document No. 11-32.); (31) A copy of Petitioner's "Motion for Post Conviction Bond in the Interim of the Court's Final Order" filed on October 27, 2016 (Document No. 11-33.); (32) A copy of Petitioner's "Motion for Provision of Copies Without Cost" dated November 16, 2016 (Document No. 11-34.); and (33) A copy of the "State's Response to Petition for Writ of Habeas Corpus" filed April 23, 2012 (Document No. 11-35.).

On February 17, 2017, Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Petitioner, advising him of his right to file a response to Respondents' "Response in Opposition to Petitioner's Motion to Waive Exhaustion Requirement" and request for dismissal of Petitioner's Petition. (Document No. 12.) On March 20, 2017, Petitioner filed his Response in Opposition. (Document No. 16.) First, Petitioner argues that he is not merely awaiting the ruling on his "Final Amended Petition" from the Circuit Court. (Id., pp. 1 – 2.) Petitioner disagrees with Respondent's argument that Mr. Rosenlieb's "Motion for Provision of Copies Without Cost" "self-converted into a Motion of Adoption of Petitioner's Amended Habeas Corpus." (Id., p. 2.) Petitioner states that he "has been under the impression that Counselor Rosenlieb was currently in the process of amending his entire 800 + page Petition from front to back." (Id.) Petitioner states that if the Circuit Court is currently in the progress of

ruling upon his petition, "Petitioner will not only expeditiously withdraw his current 2254 action from the United States District Court but will be the first to apologize and stand corrected for the misunderstanding." (Id., p. 3.) Petitioner, however, speculates that Mr. Rosenlieb in the process of amending the "Final Amended Petition" which "will undoubtedly take Attorney Rosenlieb years to amend." (Id., p. 4.) Next, Petitioner states that "[n]owhere in the Petitioner's Motion to Waive Exhaustion is there an inordinate delay complaint where he is claiming he is awaiting the Circuit Court's ruling on his habeas corpus and such a delay is violation due process." (Id., p. 5.) Petitioner states that his inordinate delay claim is focused on Mr. Rosenlieb's act of "purportedly amending Petitioner's entire October 26, 2016 'final' Petition, and such an undertaking will undoubtable delay the 'swift vindication' the United States Supreme Court of Appeals demand in remedy such a miscarriage of justice." (Id., p. 5.) Third, Petitioner argues that Respondent inappropriately faults Petitioner for filing *pro se* documents because Petitioner and Mr. Parmer were "bifurcating the habeas grounds." (Id., pp. 5 – 7.) Fourth, Petitioner argues that the delay in the appointment of new counsel should not be attributed to Petitioner due to his request that no one from the Putnam County Public Defender's Office be appointed to represent him. (Id., pp. 7 – 10.) Petitioner states that Mr. Parmer's supervisor agreed that the case should not be transferred to anyone else within the Putnam County Public Defender's office if Mr. Parmer was removed from the case. (Id.) Petitioner further speculates that the Circuit Court abandoned its efforts to locate counsel after October 10, 2013, because the docket sheet does not reflect that any other letters were mailed to prospective attorneys. (Id.) Fifth, Petitioner argues that he "did not cause the countless and conscience shocking constitutional transgression alleged in his habeas petition." (Id., pp. 10 – 11.) Finally, Petitioner argues that the Court should waive the

exhaustion requirement based upon the actual innocence doctrine.[4] (Document No. 11 – 16.) In

the alternative, Petitioner requests that the Court stay and hold these proceedings in abeyance

---

[4] In his Repy, Petitioner sets forth arguments concerning procedural defaulted *habeas* claims. The undersigned, however, notes that Petitioner's arguments are misplaced as his claims are not procedurally barred under state law. *See Morabito v. Krysevig*, 2007 WL 2071889, * 2 (E.D.Pa. July 18, 2007)(stating that "however much they may overlap in practice, exhaustion and procedural default are analytically distinct categories, and the excuses of cause and prejudice' or miscarriage of justice' are only applicable to procedural default"); *also see Long v. Perry*, 2016 WL 7235779, * 7 (M.D.N.C. Dec. 14, 2016)(finding that petitioner's *Brady* claim qualified as unexhausted, but not procedurally defaulted). A claim that has not been presented to the state's highest court "may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." *Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000)(*citing Gray v. Netherland*, 518 U.S. 152, 161, 116 S.Ct. 2074, 2081, 135 l.Ed.2d 457 (1996)); *also see Coleman v. Thompson*, 501 U.S. 722, 732, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991)("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him.") Although such claims are technically exhausted, the procedural default doctrine applies to those claims in a subsequent Section 2254 proceeding. *See Clagett v. Angelone*, 209 F.3d 370, 378 (4th Cir. 2000)("If claims were not exhausted in state court but would now be procedurally barred if brought in state court, then federal courts can treat the claims as if they were procedurally defaulted in the state courts.") The procedural default doctrine prevents a federal court from hearing a claim that has been, or would be, disposed of on "adequate and independent state-law grounds, unless the petitioner can show cause and prejudice for, or a fundamental miscarriage of justice resulting from, failure to comply with the applicable rule." *See Bostick v. Stevenson*, 589 F.3d 160, 164 (4th Cir. 2009). West Virginia Code § 53-4A-1(c) creates a rebuttable presumption that a state *habeas* petitioner knowingly and intelligently waives any claim that could have been, but was not, presented during the state *habeas* proceedings. Thus, the foregoing procedural bar "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal *habeas corpus* review of the default claim, unless the petitioner can demonstrate cause and prejudice of the default.'" *See Hayes v. Plumley*, 2016 WL 5662037, * 4 (S.D.W.Va. Sep. 30, 2016)(*citing Coleman*, 501 U.S. at 732, 111 S.Ct. at 2555); *also see Green v. Ballard*, 2015 WL 1612198, * 5 (S.D.W.Va. April 10, 2015)(recognizing that W.Va. Code § 53-4A-1(c) is "an adequate and independent state ground" for purposes of procedural default). The Fourth Circuit has recognized that "procedural default is excusable under the cause and prejudice standard when the petitioner demonstrates (1) that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule, and (2) that errors at his trial . . . worked to his *actual* and substantial disadvantage, infecting his entire trial with errors of constitutional dimensions." *Wolfe v. Johnson*, 565 F.3d 140, 158, n. 27 (4th Cir. 2009)(internal citations omitted). In the instant case, Petitioner's claims are not procedurally defaulted. Petitioner's *habeas* claims have not been presented to the State's highest court and there is no indication that the claims would be procedurally barred under state law if Petitioner attempted to present them to the state court. The record reveals Petitioner's State *habeas* proceedings are currently pending before the Circuit

pending resolution of his State court proceedings. (Id., pp. 19 – 20.)

As Exhibits, Petitioner attaches the following: (1) A copy of a letter from Mr. Bonnell dated August 28, 2012 (Document No. 16-1.); (2) A copy of a letter dated June 10, 2011, informing the West Virginia Public Defender's Office, Appellate Division, that it had been appointed to represent Petitioner in his *habeas* case (Document No. 16-2, p. 1.); (3) A copy of a letter dated January 23, 2012, from the Circuit Court to Mr. Castelle requesting a status update (Id., p. 2.); (4) A copy of signed Petition declaring a miscarriage of justice (Document No. 16-3.); and (5) A copy of a letter from Petitioner to Mr. Rosenlieb and Dr. Saar dated January 15, 2017 (Document No. 16-4.).

On March 27, 2017, Respondent filed his "Limited Reply to Petitioner's Motion for a Stay and Abeyance." (Document No. 17.) Petitioner filed his Surrreply on April 4, 2017. (Document No. 18.)

## THE APPLICABLE STANDARD

In Section 2254 proceedings, the familiar standards of Rule 12(b)(6) of the Federal Rules of Civil Procedure apply to motions to dismiss. See Walker v. True, 399 F.3d 315, 319, n. 1. (4th Cir. 2005); also see Rules Governing Section 2254 Cases in the United States District Courts, Rule 12 (The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with the *habeas* rules, may be applied to Section 2254 proceedings). A motion to dismiss a Section 2254 petition under Rule 12(b)(6) "tests the legal sufficiency of the petition, requiring the federal habeas court to 'assume all facts pleaded by the § 2254 petitioner to be true." Walker v. Kelly, , 139 (4th Cir. 2009)(citing Wolfe v. Johnson, 565 F.3d 140, 169 (4th Cir. 2009). The court, however, is "not obliged to accept allegations that 'represent unwarranted inferences,

Court.

unreasonable conclusions, or arguments,' or that 'contradict matters properly subject to judicial notice or by exhibit.'" Massey v. Ojaniit, 759 F.3d 343, 353 (4th Cir. 2014)(quoting Blankenship v. Manchin, 471 F.3d 523, 529 (4th Cir. 2006). When assessing whether the Section 2254 petition states a claim for relief, the court must consider "the face of the petition any attached exhibits." Wolfe, 565 F.3d at 169 (internal quotations omitted). The court may also consider such exhibits and matters of public record, such as documents from prior state court proceedings, in conjunction with a Rule 12(b)(6) motion without having to convert the motion to one for summary judgment. Walker, 589 F.3d at 139.

## ANALYSIS

1.      **Failure to Exhaust:**

In Respondent's Response and request for dismissal, Respondent argues that Petitioner's Petition should be dismissed for failure to exhaust. (Document No. 11.) Petitioner acknowledges that his claims are unexhausted. (Document Nos. 1 and 3.) Petitioner, however, contends that he should be excused from exhaustion due to delays in his State court proceedings. (Document Nos. 3 and 16.)

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 [AEDPA], effective April 24, 1996, provides that state prisoners must exhaust available state remedies prior to filing a § 2254 petition in federal court. 28 U.S.C. § 2254(b)(1)(A); see also, McDaniel v. Holland, 631 F.Supp. 1544, 1545 (S.D. W.Va. 1986)("A federal court will not entertain a state prisoner's petition for a writ of habeas corpus unless the prisoner has first exhausted available state judicial remedies."). Section 2254(b)(1)'s exhaustion requirement can be satisfied in either one of two ways: (1) the Petitioner can fairly present all claims in state court, or (2) the Petitioner's claims will be deemed exhausted if no state remedies

are currently available. See Gray v. Netherland, 518 U.S. 152, 161, 116 S.Ct. 2074, 2080, 135 L.Ed.2d 457 (1996). Fair presentation requires the Petitioner to (1) present the same claims (2) to all appropriate state courts. See Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997), *abrogated on other grounds*, United States v. Barnette, 644 F.3d 192 (4th Cir. 2011). Presentation of the same claim "contemplates that 'both the operative facts and the 'controlling legal principles' 'must be presented to the state court." Id. (quoting Verdin v. O'Leary, 972 F.2d 1467, 1474 (7th Cir. 1992) (quoting Picard v. Connor, 404 U.S. 270, 277, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971)). Although it is unnecessary to cite "book and verse on the federal constitution," "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." See Picard, 404 U.S. at 278, 92 S.Ct. at 514; Anderson v. Harless, 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982)(internal citations omitted); Baker v. Corcoran, 220 F.3d 276, 289 (4th Cir. 2000). The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined." Matthews, supra, 105 at 911. "If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." Duncan v. Henry, 513 U.S. 364, 365-66, 115 S.Ct. 887, 886, 130 L.Ed.2d 865 (1995); see also Baldwin v. Reese, 541 U.S. 27, 32, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004)(stating that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal

source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal'"). Petitioner must also provide the state court with the facts supporting the claimed constitutional violation and "explain how those alleged events establish a violation of his constitutional rights." <u>Mallory v. Smith</u>, 27 F.3d 991, 994 (4th Cir. 1994). The requirement of presentation of the same claim to all appropriate state courts is designed to give "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999). This requirement is satisfied by presentation to the state's highest court on either direct or collateral review. <u>Id.</u> at 844, 119 S.Ct. at 1732. In West Virginia, prisoners may exhaust their available State court remedies by the following: (1) stating cognizable federal constitutional claims in a direct appeal to the West Virginia Supreme Court of Appeals; (2) stating cognizable federal constitutional claims in a petition for a writ of *habeas corpus* in a State circuit court pursuant to West Virginia Code § 53-4A-1, followed by filing a petition for appeal from an adverse ruling to the West Virginia Supreme Court of Appeals; or (3) filing a petition for writ of *habeas* corpus under the West Virginia Supreme Court's original jurisdiction and receiving a dismissal with prejudice.<sup>5</sup> <u>Moore v. Kirby</u>, 879 F.Supp. 592, 593 (S.D.W.Va. 1995); <u>McDaniel v. Holland</u>, 631 F.Supp. 1544, 1545-46 (S.D.W.Va. 1986).

Generally, a federal district court may not review a Section 2254 petition unless there has been "total exhaustion" of the presented issues. <u>Rose v. Lundy</u>, 455 U.S. 509, 522, 102 S.Ct.

---

<sup>5</sup> An original jurisdiction petition that is denied without an indication that the denial is with prejudice following a determination on the merits will not exhaust the petitioner's state court remedies. *See Moore*, 879 F.Supp. at 593; *McDaniel*, 631 F.Supp. at 1546; *see also, Meadows v. Legursky*, 904 F.2d 903, 908-09 (4th Cir. 1990)(*abrogated on other grounds, Trest v. Cain*, 522

1198, 71 L.Ed.2d 379 (1982); <u>also see</u> <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 477, 93 S.Ct. 1827,

36 L.Ed.2d 439 (1973)(When a petitioner fails to exhaust his state court remedies, a federal

*habeas* petition should be dismissed.) When a petitioner presents a mixed petition under § 2254,

that is a petition containing claims that are both exhausted and unexhausted, the District Court

may (1) dismiss the petition in its entirety; (2) order a stay and abeyance while the petitioner

exhausts his claims in State Court; or (3) allow the petitioner to remove the unexhausted claim

claims and proceed with the exhausted claims. <u>Rhines v. Weber</u>, 544 U.S. 269, 275-77, 125 S.Ct.

1528, 161 L.E.2d 440 (2005). "[N]otwithstanding the failure of an applicant to exhaust the

remedies available in the courts of the state," a district court may deny the unexhausted claims

on the merits. 28 U.S.C. § 2254(b)(2); <u>also see</u> <u>White v. Keller</u>, 2013 WL 791008, * 5 (M.D.N.C.

March 4, 2013). To be excused from the exhaustion requirement, Petitioner must establish that

"there is an absence of available State corrective process" or "circumstances exist that render

such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B). The

foregoing statutory exceptions apply "only if there is no opportunity to obtain redress in state

court or if the corrective process is so clearly deficient as to render futile any effort to obtain

relief." <u>Duckworth v. Serrano</u>, 454 U.S. 1, 3, 102 S.Ct. 18, 70 L.Ed.2d 1 (1981). "State remedies

may be rendered ineffective by inordinate delay or inaction in state proceedings." <u>Ward v.</u>

<u>Freeman</u>, 46 F.3d 1129 (4th Cir. 1995)(unpublished table decision); <u>Farmer v. Circuit Court of</u>

<u>Md. for Balt. City.</u>, 31 F.3d 219, 223 (4th Cir. 1994)("There is . . . authority for treating

sufficiently diligent, though unavailing, efforts to exhaust as, effectively, exhaustion, and for

excusing efforts sufficiently shown to be futile in the face of state dilatoriness or recalcitrance.").

---

U.S. 87, 118 S.Ct. 478, 139 L.Ed.2d 444 (1997)).

Courts within the Fourth Circuit have indicated that the "inordinate delay" must be attributable to the state's procedures that infringe on the petitioner's due process right, and not attributable to the petitioner's own actions. See Walkup, 2005 WL 2428163 at 3; also see Tinsley v. Warden, 2016 WL 1625243 (D.S.C. April 21, 2016). The relevant inquiry is whether the delay amounts to a violation of the petitioner's right to due process. See United States v. Brown, 292 Fed.Appx. 250, 252 (4th Cir. 2008)(citing United States v. Johnson, 732 F.2d 379, 381 (4th Cir. 1984)); also see Gary v. Bodison, 2010 WL 2195464 (D.S.C. June 1, 2010)(citing Barry v. Sigler, 373 F.2d 835, 838 n. 4 (8th Cir. 1967)(Federal intervention on the merits is generally warranted only in cases where a delay in state court proceedings amounts to a denial of a petitioner's due process right.) To determine whether a delay amounts to a due process violation, the Fourth Circuit has adopted the four-factor speedy trial analysis as announced in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). See United States v. Johnson, 732 F.2d 379, 381 (4th Cir. 1984), cert. denied, 469 U.S. 1033, 105 S.Ct. 505, 83 L.Ed.2d 396 (1984). The four-factors are as follows: (1) the length of delay; (2) the reason for the delay, (3) the defendant's assertion of his right; and (4) prejudice to the defendant. Id. No one factor is dispositive; all factors are to be considered together in light of the particular circumstances of the case. Barker v. Wingo, 407 U.S. at 533, 92 S.Ct. at 2194.

First, the undersigned will consider the first Barker factor concerning the length of delay. The record reveals that Petitioner has had post-conviction proceedings pending before the State court since May 9, 2011. Specifically, at the time of his instant filing, Petitioner's State *habeas* petition had been pending before the Circuit Court for approximately five and half years. Generally, courts find an inordinate delay only when long periods of time have passed. See

Brennan v. McGraw, 2012 WL 3656487 (S.D.W.Va. Aug. 24, 2012)(J. Goodwin)(citations omitted)("[D]elay only rises to the level of 'inordinate' in extreme cases."); also see Turner v. Bagley, 401 F.3d 718, 726-27 (6th Cir. 2004)(excusing exhaustion where the petitioner's state direct appeal had been pending for 11 years); Lee v. Stickman, 357 F.3d 338, 341-42 (3rd Cir. 2004)(holding that an 8-year delay in reaching the merits of a post-conviction petition constitute inordinate delay); Mathis v. Hood, 851 F.2d 612, 614 (2nd Cir. 1988)(finding a 6-year delay of direct appeal constitutes inordinate delay); Johnson, supra, 732 F.2d at 382(finding that a 2-year delay in the preparation of transcripts was "in the range of magnitude of delay as a result of which courts have indicated that due process may have been denied"); Gardner v. Plumley, 2013 WL 5999041 (S.D.W.Va. Nov. 12, 2013)(J. Goodwin)(finding inordinate delay where petitioner's state proceedings were pending for nearly 20 years without a decision from the state court); but also see Miller v. McFadden, 2015 WL 846530 (D.S.C. Feb. 26, 2015)(finding no inordinate delay where the time between when the petition was filed and when the Circuit Court issued its Order of Dismissal was approximately 24 months); Cobarruvias v. Cartledge, 2012 WL 6772231, * 2 (D.S.C. Nov. 2012)(finding that 22 months does not qualify as inordinate delay); Short v. Hoke, 2010 WL 2509633 (S.D.W.Va. June 18, 2010)(J. Faber)(finding no inordinate delay based upon petitioner's State petition pending in the circuit court for little more than a year); Walkup v. Haines, 2005 WL 2428163 (S.D.W.Va. Sept. 30, 2005)(J. Faber)(finding a 3 year delay not to be inordinate delay); Gilchrist v. Hagan, 2005 WL 3747428 (D.S.C. March 11, 2005)(finding that "a 16 month wait is not excessive and thus weighs in favor of a finding that there has been no due process violation"). Thus, the undersigned finds that the length of Petitioner's pending State proceedings are approaching the magnitude of delay that has been

determined to be inordinate or a violation of due process. The length of delay, however, "is not a determinative factor when some of the delay is attributable to petitioner." Walkup, 2005 WL 2428163 at 3. As stated above, there is no one factor that is dispositive and all factors are to be considered together in light of the particular circumstances of the case. Barker v. Wingo, 407 U.S. at 533, 92 S.Ct. at 2194. Therefore, the undersigned will proceed to consider the remaining Baker factors.

The undersigned will next consider the second Barker factor concerning the reason of delay. Although Petitioner's State *habeas* has been pending since 2011, the record reveals that a significant part of the delay is attributable to Petitioner. Approximately one month after the filing of the Petitioner's initial *pro se habeas* petition, the Circuit Court appointed Mr. Parmer as *habeas* counsel. Petitioner, however, proceeded to file numerous *pro se* filings. Specifically, Petitioner filed numerous *pro se* amended *habeas* petitions, supplements, and motions. After the filing of Petitioner's sixth *pro se* amended *habeas* petition and several letters complaining of difficulty communicating with *habeas* counsel (Mr. Parmer), the Circuit Court conducted a status conference on September 21, 2012. During the status conference, Mr. Parmer explained to the Circuit Court the extreme difficulty he was experiencing with filing an amended *habeas* petition. Specifically, Mr. Parmer stated that he and Petitioner were "at loggerheads with regard to strategy" and the "contents of the amended petition." Mr. Parmer further explained "it's very difficult for us to agree about interpretation of the law, what cases mean." Despite the foregoing, the record does not support Petitioner's claim that the Circuit Court "bifurcated" Petitioner's claims and instructed Petitioner to file *pro se* documents in support thereof.[5] Following the status

---

[5] During the status conference, the Circuit Court addressed Mr. Parmer's concern regarding claims he believed to be meritorious verses claims Petitioner believed to be meritorious.

conference, Petitioner continued his practice of filing *pro se* motions and *pro se* amended *habeas* petitions. Clearly, Petitioner's continuous *pro se* filings caused further delay because Mr. Parmer was required to reconcile the *pro se* documents with the overall case strategy.[6] Although Petitioner complains that his case has been pending since 2011 without the filing of an amended *habeas* petition by counsel, the record reveals that Mr. Parmer had an amend petition prepared but Petitioner forbid him to file the document.[7] Between March 2013 and June 2013, Petitioner requested the appointment of new counsel, instructed the Circuit Court not to accept any filings made by Mr. Parmer, and caused his expert witness to cease communications with Mr. Parmer.[8] The foregoing clearly caused delay attributable to Petitioner.

---

(Document No. 3-3.) Mr. Parmer requested that the Circuit Court allow Petitioner "to argue the grounds that I don't necessarily agree with him about, the strengths of, and will allow me to argue the grounds that I do believe in the strength of." (*Id.*, p. 1) The Circuit Court, however, specifically stated that the Court was not going to grant Petitioner "co-counsel status." (*Id.*, p. 3.) Thus, there is no indication that the Circuit Court "bifurcated" Petitioner's claims. (*Id.*) The Circuit Court merely suggested that in preparing the Petition that counsel could divide the Petition into two sections - - one section setting forth the grounds counsel believed to be meritorious and one section setting forth grounds Petitioner's believed to be meritorious. (*Id.*)

[6] During a status conference, Mr. Parmer explained that Petitioner "fancies himself a legal scholar and sometimes we don't see eye to eye on that." Mr. Parmer stated that he received multiple letters from Petitioner that were "basically legal briefs." Mr. Parmer explained that this "required [him] not only to read the cases, but also read the facts that he's talking about and try to find them in the record because sometimes they're accurately remembered and sometimes they're not, so it creates a lot of work for me in addition." (Document No. 3-6, p. 1.)

[7] By letter to the Circuit Court dated April 7, 2013, Petitioner acknowledged that he had reviewed an amended petition prepared by Mr. Parmer but Petitioner complained that it was "a prosecutorial rebuttal to each of my grounds, to which his arguments are in favor of the State." (Document No. 11-22, p. 3.) Petitioner, therefore, argued that Mr. Parmer and the entire Putnam County Public Defender's Office was conspiring against him. (*Id.*) Petitioner further requested that the Circuit Court not accept any filings by Mr. Parmer. (*Id.*)

[8] By e-mail dated May 9, 2013, Dr. Bonnell advised Mr. Parmer as follows: "I have received two letters from [Petitioner] indicating he has requested that you be removed as counsel. Since it was he who first contacted me, I am uncomfortable dealing with you until/unless he changes his

On June 27, 2013, irreconcilable differences between Petitioner and Mr. Parmer resulted in the Circuit Court granting Mr. Parmer permission to withdraw as counsel and granting Petitioner's request to appoint new counsel.[9] Petitioner now complains that the Circuit Court delayed appointing new *habeas* counsel for approximately a year and a half (June 27, 2013 – January 8, 2015). The record, however, reveals that Petitioner specifically requested that the Circuit Court not appoint anyone from the Putnam County Public Defender's Office. Although the Circuit Court advised Petitioner that granting such a request would "extremely delay any further prosecution of this matter," Petitioner acknowledged that he understood and consented to the delay. (Document No. 3-6.) The record further reveals that during this period of time, the Circuit Court actively contacted multiple law firms seeking attorneys willing to accept appointment to Petitioner's case.[10] Furthermore, Petitioner continued to file *pro se* documents (motion to amend, amended *habeas* petition, and letters in support of petition) during the period

---

mind." (Document No. 11-20, p. 4.)

[9] The record reveals that Petitioner filed a Complaint with the West Virginia Bar concerning Mr. Parmer. (Document No. 3-6, p. 2.) During the hearing to remove him as counsel, Mr. Parmer explained as follows (*Id.*, p. 1):

> [S]peaking for myself, your Honor, or speaking for my office, I've been informed by my supervisor that we can't transfer the case to anyone else because the amount of time I've spent on the case already. I've spend literally hundreds of hours going through trial transcripts, the appellate documents, all the discovery, doing my investigation. I think it would be a massive waste of resources to appoint anyone else to represent him from our office.

[10] In his Reply, Petitioner argues that the Circuit Court stopped searching for counsel in October 2013, because the Docket Sheet does not reflect that any other written requests were mailed to prospective attorneys. The record, however, does not support such a conclusion. During the hearing, the Circuit Court Judge specifically told Petitioner that "I'll call around and see who I can get to step up, and then we'll make an appointment." (Document No. 3-6, p. 3.) The record supports a finding that Circuit Court Judge acted as he had promised. There is no indication in the record that a letter was ever mailed to Mr. Rosenlieb, yet the Circuit Court appointed him as counsel.

of time he was without counsel. On January 8, 2015, the Circuit Court appointed Mr. Rosenlieb as *habeas* counsel. It is reasonable that some delay would occur as a result of the appointment of new counsel. A replacement attorney would need time to obtain and review the file and become familiar with the facts and applicable law. Despite having newly appointed counsel, however, Petitioner continued to cause further delay by filing several *pro se* documents. Approximately two months after Mr. Rosenlieb's appointment, Petitioner resumed his practice of filing *pro se* documents. Petitioner's most recent *pro se* filings are the following: (1) Petitioner's "Final Amended Petition" and Motion for Bond filed on October 27, 2016; and (2) Petitioner's notification to the Circuit Court on November 14, 2016, that he was in the process of obtaining an affidavit in support of his "Final Amended Petition." The undersigned notes that Petitioner's *pro se* "Final Amended Petition" consists of 850 pages and 58 grounds for *habeas* relief (excluding sub-grounds). Petitioner filed his instant Section 2254 Petition and Motion to Waive Exhaustion on December 19, 2016, approximately two months after filing his voluminous *pro se* "Final Amended Petition" in the Circuit Court and one month after notifying the Circuit Court of his intention to file an affidavit in support of his *pro se* "Final Amended Petition."[11] Thus, the record supports a finding that a significant portion of the delay of proceedings concerning Petitioner's State *habeas* petition is attributable to Petitioner's actions. See Gardner v. Plumley, 2013 WL 5999041, * 6 (S.D.W.Va. Nov. 12, 2013)(J. Goodwin)(citations omitted)("The rule

_____

[11]  Although Petitioner speculates that his "Final Amended Petition" will sit for years waiting for a final amendment by Mr. Rosenlieb, the record does not support such a conclusion. The record reveals that Mr. Rosenlieb has recently filed a motion requesting that the Circuit Court accept the *pro se* "Final Amended Petition" and order that "copies be reproduced as necessary to effectuate service of Petitioner's Amended Habeas Corpus Petition." (Document No. 11-34.) Thus, it is clear that Mr. Rosenlieb wishes for Petitioner's *pro se* "Final Amended Petition" to be served upon the State and to proceed with this petition.

excusing exhaustion in cases of inordinate delay is not limited to delays caused by judge, court officials, and prosecutors; it also has been applied to delays caused by court-appointed counsel, which may be 'attributable to the state' as long as 'the petitioner has not personally caused the delays nor condoned them.") Petitioner's numerous and relentless *pro se* filings, in combination with his continued dissatisfaction with appointed counsel, clearly has resulted in delays that are attributable to Petitioner. See Matthews, supra, 51 F.3d at 267(noting that nearly a 4-year delay was not inordinate because some of the delay was attributable to the petitioner); Walkup, 2005 WL 2428163 at 3(stating that the length of delay "is not a determinative factor when some of the delay is attributable to petitioner."). Accordingly, the record supports a finding that a significant portion of the delay of proceedings concerning Petitioner's State *habeas* petition is attributable to Petitioner's actions. Thus, the second Barker factor does not weigh in favor of removing the exhaustion requirement.

Considering the remaining Barker factors, the undersigned finds that the instant case does not rise to the level of a due process violation. Although Petitioner has diligently asserted his rights, there is no indication that any delay in the State court proceedings has prejudiced his position. There is no indication or allegation that any delay has caused any loss of evidence necessary to support Petitioner's *habeas* claims. A review of the docket sheet reveals that reasonable activity has occurred in Petitioner's current *habeas* proceedings. Specifically, the docket sheet reveals that at least eight *pro se* amended *habeas* petitions have been filed, two separate attorneys appointed to represent Petitioner, and appointed counsel recently requested that the Circuit Court accept Petitioner's *pro se* "Final Amend Petition." Clearly, Petitioner's State *habeas* proceeding is not dormant or languishing in the Circuit Court. Further, there is no

indication that the State is intentionally hindering a timely resolution of the *habeas* petition. Finally, the record reveals that Petitioner has had at least two attorneys appointed to represent him in his State *habeas* proceedings and has been allowed to file a multitude of *pro se* documents, which evidences the State's efforts to protect Petitioner's due process rights.

Based upon the foregoing and a consideration of the <u>Barker</u> factors, the undersigned finds that Petitioner has failed to exhaust his state remedies and has not raised sufficient grounds to justify excusing the exhaustion requirement. The undersigned cannot find that Petitioner's state remedies have been rendered unavailable or ineffective by inordinate delay that is attributable to the State. The Court, therefore, will consider whether a stay should be granted.

**2.      Motion for Stay and Abeyance:**

In his "Motion for Stay and Abeyance," Petitioner requests that the Court stay the current proceedings and allow Petitioner to return to State court to fully exhaust his claims. (Document No. 16, pp. 19 - 20.) Petitioner concludes that he "has demonstrated good cause on all three of Rhines prongs." (<u>Id.</u>) In Response, Respondent argues that Petitioner's Motion should be denied because he cannot satisfy <u>Rhine</u>. (Document No. 17.) Specifically, Respondent contends that Petitioner is not entitled to a stay and abeyance based upon the following: (1) "Petitioner has repeatedly filed motions and/or sent letters to the state circuit court which have derailed progress in his state habeas corpus proceedings;" (2) He has been combative with both of his court-appointed attorneys and has insisted that both be removed as counsel;" and (3) "Petitioner has already recognized AEDPA's period of limitations has been tolled since he filed his state habeas petition and will remain tolled until it is ruled upon." (<u>Id.</u>) In Reply, Petitioner argues that Respondent misapplied <u>Rhines</u> to the facts of the instant case. (Document No. 18.) Petitioner

argues that Respondent cannot "prove the Petitioner's habeas filing were filed with intent to 'prolong his incarceration.'" (<u>Id.</u>) Petitioner contends that his only motivation in filing documents in his *habeas* proceedings was to "get out of prison." (<u>Id.</u>) Finally, Petitioner contends that a stay is warranted based on the possibility that he will be successful in his State *habeas* proceedings concerning his murder conviction, but unsuccessful as to his two other convictions. (<u>Id.</u>) Petitioner contends that if he is successful on his State challenge to his murder conviction, he could be entitled to immediate release. (<u>Id.</u>) Thus, Petitioner contends he would no longer be "in custody" for purposes of filing in federal court, which would prevent him from challenging his other two convictions via a Section 2254 Petition in federal court. (<u>Id.</u>)

In <u>Rhines</u>, the Supreme Court determined that when a State prisoner presents a mixed petition under § 2254, that is a petition containing claims that are both exhausted and unexhausted, the district Court may (1) dismiss the petition in its entirety; (2) order a stay and abeyance while the petitioner exhausts his claims in State Court; or (3) allow the petitioner to remove the unexhausted claim claims and proceed with the exhausted claims. <u>Rhines v. Weber</u>, 544 U.S. 269, 275-77, 125 S.Ct. 1528, 161 L.E.2d 440 (2005). The Supreme Court, however, cautioned that a "[s]tay and abeyance, if employed too frequently, has the potential to undermine" the twin purposes of the total exhaustion requirement and the limitation period. <u>Id.</u>, 544 U.S. at 277, 125 S.Ct. at 1534. Specifically, the Supreme Court explained as follows:

> Staying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings. It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition.

<u>Id.</u>, 544 U.S. at 277, 125 S.Ct. at 1535. Thus, a "stay and abeyance is only appropriate when the

district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." Id. (noting that "if a district court dismisses a mixed petition close to the end of the 1-year period, the petitioner's chances of exhausting his claims in state court and refiling his petition in federal court before the limitations period runs are slim."); also see Demere v. Ballard, 2013 WL 5352950 (N.D.W.Va. Sept. 24, 2013)("this procedure is only appropriate where an outright dismissal could jeopardize the timeliness of a petitioner's collateral attack in federal court").

Applying the Rhines standard to the facts of the instant case, the undersigned finds that a stay and abeyance is not warranted. The undersigned finds that the record does not support such a timeliness concern regarding the filing of Petitioner's Section 2254 Petition. Section 2244(d)(1)(A) provides that a Section 2254 *habeas* petition must be filed within one year after "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).[12] Petitioner's direct

---

[12] Title 28, United States Code, Section 2244(d)(1) provides as follows:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

appeal of his conviction and sentence was refused by the West Virginia Supreme Court of Appeals on September 22, 2010. Petitioner did not file a Petition for Writ of Certiorari in the United States Supreme Court, and therefore his conviction became final under 28 U.S.C. § 2244(d)(1)(A) on December 22, 2010 (90 days after the West Virginia Supreme Court of Appeals denied his Petition for Appeal of his conviction and sentence). See Harris v. Hutchinson, 209 F.3d 325, 328 (4th Cir. 2000). Thus, pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, the one-year statute of limitation began to run on December 23, 2010, and Petitioner had until December 22, 2011, to file a Section 2254 Application in the United States District Court, unless he first sought post-conviction relief from the State courts. On May 9, 2011, Petitioner filed his *pro se* Petition for Writ of *Habeas Corpus* in the Circuit Court of Putnam County (Case No. 11-C-126), which was 137 days after the statute of limitation period began to run. The Court notes that Petitioner's State *habeas* petition is currently pending before the Circuit Court. Thus, the one-year statute of limitation is currently tolled by Petitioner's State *habeas* proceedings. Upon the conclusion of Petitioner's State *habeas* proceedings, Petitioner will have approximately 228 days in which to file a Section 2254 Petition in federal court.[13] Accordingly, the undersigned finds that dismissal will not jeopardize the timeliness of Petitioner's Section 2254 Petition, and he cannot at this time demonstrate good cause for his failure to present his claims to the State courts prior to seeking federal *habeas* relief. Further, Petitioner's example of successfully obtaining State *habeas* relief as to one conviction, resulting

---

[13]  Petitioner is hereby **NOTIFIED** that the calculations of the statute of limitations set forth in this Proposed Finding and Recommendation are not conclusively correct. It is Petitioner's responsibility to file his petition correctly and timely.

in the possibility of immediate release, is speculative and insufficient. Petitioner proposes an example of being released on the murder conviction, but losing federal jurisdiction to challenge his remaining un-incarcerated convictions.[14] Such an example is speculative and granting a stay on such speculation would undermine" the twin purposes of the total exhaustion requirement and the limitation period. Accordingly, undersigned recommends that Petitioner's "Motion for Stay and Abeyance" (Document No. 16, pp. 19 - 20) be denied, and Petitioner's Petition must be dismissed without prejudice.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DENY** Petitioner's "Motion to Waive Exhaustion Requirement" (Document No. 3), **DENY** Petitioner's "Motion for Stay and Abeyance" (Document No. 16, pp. 19 - 20), **DISMISS** without prejudice Petitioner's Petition Under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* By a Person in State Custody (Document No. 1), and remove this matter from the Court's docket.

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable Chief United States District Judge Robert C. Chambers. Pursuant to the provisions of Title 28, United States Code, Section

---

[14] A petitioner must be "in custody" when his habeas petition is filed. *Carafas v. LaValle*, 391 U.S. 234, 238, 88 S.Ct. 1556, 1560, 20 L.Ed.2d 554 (1968). **Error! Main Document Only.**"[O]nce the federal jurisdiction has attached in the District Court, it is not defeated by the release of the petitioner prior to completion of the proceedings on such application. *Id.*; *also see Spencer v. Kemna*, 523 U.S. 1, 118 S.Ct. 978, 140 L.Ed.2d 43 (1997)(finding that the "in custody" provision of Section 2254 requires only that the petitioner be incarcerated at the time the petition is filed.).; *Leonard v. Hammon*, 804 F.2d, 838 (4th Cir. 1986)(finding that petitioner's subsequent release had no effect upon the court's jurisdiction).

636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have seventeen days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.) cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Chief Judge Chambers, and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same Petitioner, who is acting *pro se*, and to counsel of record.

Dated: May 11, 2017.

Omar J. Aboulhosn
United States Magistrate Judge

34